J-S60016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF D.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S.-G. | No. 931 EDA 2015 |

Appeal from the Order Entered November 6, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 16-2014-AD

*****

| | |
|---|---|
| IN RE: ADOPTION OF B.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S.-G. | No. 932 EDA 2015 |

Appeal from the Order Entered November 6, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 15-2014-AD

*****

| | |
|---|---|
| IN RE: ADOPTION OF J.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S.-G., MOTHER | No. 993 EDA 2015 |

Appeal from the Order Entered November 6, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 17-2014-AD

BEFORE: BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 16, 2015**

J.S.-G. (Mother) appeals from the order of the Court of Common Pleas of Wayne County that granted involuntary termination of her parental rights as to her children, J.C. (born May 2001), D.S. (born August 2002), and B.C (born September 2006). After careful review, we affirm.

The trial court stated the facts of this matter as follows:

Mother is currently incarcerated at the Pike County Correctional Facility. The natural father of the children, R.C., intends to voluntarily terminate his parental rights as to all three children. D.S., J.C., and B.C. have resided in [their intended adoptive parents'] household since January 2013.

In 2008, D.S., J.C., and B.C. were placed through Wayne County Children and Youth Services in the home of [B.H. and R.M., their intended adoptive parents]; in approximately March 2010, the children were returned to [Mother]. Prior to January 2013, the children believed that [B.H.] and [R.M.] were their aunt and uncle, respectively.

In January 2013, [Mother] gave custody of all three children to [B.H.] and [R.M.] following an incident of domestic violence between [Mother] and her spouse; the children have remained in the H./M. household since that time. Also in January 2013, [B.H.] and [R.M.] filed an Emergency Petition for Custody; the [c]ourt granted temporary physical and legal custody of all three children to [B.H.] and [R.M.].

[Mother] last saw her children on April 15, 2014, at a supervised visit. Following the supervised visit[, Mother] was arrested for violating her parole due to failing to appear. Since April 15, 2014, [Mother] has been incarcerated for all but eleven days. [Mother] did not inform her children that she was not incarcerated for eleven days because she knew she was going to be sentenced on another charge.

[Mother] was sentenced in Wayne County [in] June 2013 and was incarcerated from June 2013 until sometime in September 2013. [Mother] pled guilty and was sentenced in Pike County in May 2014. In August 2014, [Mother] was sentenced on a new

criminal charge of retail theft in Wayne County. In August 2014, [Mother] was sentenced in Pike County on her parole violation. In October 2014, [Mother] was sentenced in Pike County on two new criminal charges. [Mother's] aggregate sentence is not less than 24 months nor more than 60 months. [Mother's] best case scenario is to be released on August 7, 2016.

Over the last six months, [Mother] has attempted to contact her children by telephone and letter. [Mother] was represented by counsel in the custody case against [B.H.] and [R.M.]; [Mother] entered into a stipulation in the custody case which allowed her to have supervised contact with the minor children. [Mother's] supervised visitation was supervised by Father Erb at the Episcopal Church in Honesdale, [Pennsylvania]. [Mother] stated that while she was incarcerated she tried to call her children and [B.H.] would say hello and then hang up.

Trial Court Opinion, 11/6/14, at 1-3 (numbering omitted).

B.H. and R.M. petitioned the trial court to terminate Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2),[1] and (b). A hearing was

_____

[1] Section 2511(a) of the Adoption Act provides, in relevant part:

(a) **General rule.** – The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

23 Pa.C.S. § 2511(a).

held on October 6, 2014. The trial court entered a final decree terminating

Mother's parental rights to the children on November 6, 2014. Mother

subsequently filed timely appeals,[2] which have been consolidated for our

review.

On appeal, Mother raises the following issues:

1. Whether the court erred in concluding that [B.H. and R.M.] established, by clear and convincing evidence, the elements required to involuntarily terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1).

2. Whether the court erred in concluding that [B.H. and R.M.] established, by clear and convincing evidence, the elements required to involuntarily terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).

3. Whether the court erred in finding that the best interest of the children would be served by granting the termination pursuant to 23 Pa.C.S.A. § 2511(b).

Brief of Appellant, at 4.

It is well established that:

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the

_____

[2] We note that though timely notices of appeal were filed, the trial court provided the certified record well beyond its due date. Additionally, Mother and Appellees B.H. and R.M. each requested and received briefing extensions. As a result, this matter's panel listing has been delayed for multiple months.

individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in 23 Pa.C.S. § 2511(b)).

Pursuant to section 2511(a)(1), parental rights may be terminated based upon relinquishment or failure to perform parental duties in the six months prior to the filing of the termination petition. However,

[a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citations and quotation marks omitted). As to section 2511(a)(2), the party seeking involuntary termination must prove: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and

(3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *Id.*

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

Instantly, Mother argues that B.H. and R.M. failed to present clear and convincing evidence of grounds for termination pursuant to sections 2511(a)(1) and (2). In support of her position, Mother asserts that she was permitted to have and did have supervised contact with her children up until April 15, 2014, when she was detained by the probation department. While incarcerated, Mother sought to have contact with her children through letters and telephone calls. Despite being currently incarcerated, Mother argues that

> she had made substantial strides in having contact with the children prior to April 15, 2014, and was making efforts to be involved in the lives of the minor children. . . . [S]he anticipates a release date in August 2016. At that time, her home plan would involve acting as a parent for the children.

Brief of Appellant, at 13.

The trial court determined that Mother had not deliberately decided to terminate her relationship with the children since she attempted to maintain contact through telephone calls and letters. However, simply attempting to speak with her children via telephone falls far short of Mother demonstrating

- 6 -

an ability to parent. Indeed, the trial court found that Mother failed to perform any parental duties during the six months prior to the filing of the termination petitions, including that she failed to arrange visitation, did not provide any monetary support, food, or clothing, and failed to obtain court-ordered reunification counseling.

Although Mother was incarcerated for much of the six-month period before the termination petitions were filed, the record reveals that B.H. and R.M. have been solely responsible for performing parental duties for the children since January 2013. Mother had supervised visits with the children, but she did not take any action to enforce visitation while incarcerated and she makes no claim that she assumed any other parenting duties since January 2013. Additionally, the children resided with and were cared for by B.H. and R.M. for approximately two years from 2008 to 2010. Thus, when considering the whole history of this case, Mother's failure to perform parental duties over the relevant six-month period and throughout the children's lives indicates that involuntary termination is warranted pursuant to section 2511(a)(1). **K.Z.S.**, **supra**.

Clearly, Mother's incarceration is a significant factor in this matter, and it is properly considered as relevant to termination under section 2511(a)(2). Our Supreme Court has held that:

> Incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is providing 'essential parental care, comfort or subsistence' and the length of the remaining confinement can be considered highly relevant to whether 'the conditions and causes of the incapacity, abuse,

neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). Moreover, regarding termination pursuant to section 2511(a)(2), "parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness[,] . . . may properly be rejected as untimely or disingenuous." *K.Z.S.*, *supra* at 758 (citation omitted).

Instantly, Mother has exhibited a continued incapacity to parent her children. Mother was incarcerated from June 2013 through September 2013. She has been incarcerated again since April 2014, except for one eleven-day period, and she will remain incarcerated at least until August 2016. Moreover, "[d]uring the eleven days she was not incarcerated, [Mother] committed another crime; however, she chose not to have any contact with her children during that time." Trial Court Opinion, 11/6/14, at 7. It is undisputed that Mother's choices and her incarceration at various periods over the course of her children's lives have left her children without essential parental care.

The record further reveals that Mother does not have the will or ability to remedy her incapacity to parent. Her commission of a crime and failure to take on any parental responsibility during her eleven days of freedom demonstrates this. Mother testified that she is taking all of the programs she can while incarcerated and that she finally realizes that what she has

done is wrong. However, Mother's claims of her ability to change are not only untimely, but are belied by her actions. *K.Z.S.*, *supra*. Ultimately, we "will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We next turn to section 2511(b), which requires a determination regarding whether termination best serves the developmental, physical, and emotional needs and welfare of the child.

> Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of a child. . . . [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012) (citations omitted).

Here, the record indicates that the parent-child bond between Mother and her children is weak and does not benefit the children. B.H. testified that Mother made promises to the children during telephone conversations, indicating Mother would get a job, move to Long Island or Florida, and never go back to jail. As the trial court noted, these unfulfilled promises have had a "detrimental effect on the children, especially D.S. who is unable to

understand that these promises were not reality.[3]  The children, in particular D.S., have difficulty in reconciling [Mother's] promises with the fact that [Mother] continues to commit criminal offenses and continues to be incarcerated."  Trial Court Opinion, 11/6/14, at 9.

The children have expressed their desire for stability, which B.H. and R.M. have provided.  The children have established a strong bond with B.H. and R.M. and have indicated they would like to continue living with them. Out of the three children, D.S. has indicated a desire not to lose contact with his mother, but he also acknowledges that B.H. and R.M. care for him, provide him with a stable home, and that he loves them.

Accordingly, we find that the relationship between Mother and the children can be severed without detrimental effects and that it is in the children's best interests that Mother's parental rights be terminated.  *K.M.*, *supra*.

Order affirmed.

---

[3] D.S. has autism, and therefore has had greater difficulty than his siblings in understanding that Mother's promises have been disingenuous.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/16/2015</u>